DAMOORGIAN, J.
 

 The School District of Indian River County, Florida (“District”) appeals the final order of the Florida Public Employees Relations Commission, (“Commission”) in which the Commission found that the District engaged in an unfair labor practice by refusing to impact bargain with the Indian River County Education Association, Local 3617, American Federation of Teachers, Florida Education Association, AFL-CIO (“Union”) over a new District policy requiring teachers to submit their lesson plans via the internet using the eSembler program or similar method of electronic transmission.
 
 [1]
 
 We affirm the Commission’s final order concluding that the District committed an unfair labor practice by refusing to impact bargain over the District’s decision. However, we reverse that part of the Commission’s order requiring the District to pay the Union’s reasonable attorney’s fees and costs.
 

 Before the start of the 2008 school year, the District sent notice to all secondary school administrators advising them that, beginning in 2009, all secondary school teachers would be required to submit their lesson plans via the internet using eSem-bier. Previously, teachers had been required to submit lesson plans to school administrators in any manner they chose. What followed was a series of letter exchanges between representatives of the Union and the District.
 
 [2]
 

 The letter exchange began with the Union expressing opposition to the District’s new requirement and making a demand to bargain over the impact of the policy.
 
 [3]
 
 In its several responses, the Union pointed out a number of areas that would be substantially impacted from the imposition of the District’s new directive:
 

 1. ESembler is relatively user unfriendly and time consuming. It does not permit a teacher to remain on the same page while saving the document, requires excessive scrolling, and prints out in a font which is difficult to read. Further, many teachers still need additional training on eSembler, which-will result in additional work.
 

 2. Teachers who, in order to comply with the directive, changed from hand writing their lesson plans to electronic format are placed at a disadvantage. For example, there would be no access to lesson plans during power outages or at times when the system is offline.
 

 3. Hard copies of lesson plans are easier to access and amend in the classroom. As teachers find it necessary to print out lesson plans for use in the classroom, the very reason to create electronic documents is de
 
 *726
 
 feated. Further, supplies of paper and printer cartridges are limited and in some cases not available.
 

 4. Not all teachers have access to computers at home. Therefore, their at-school workload would increase as additional hours would be spent at school in order to file their lesson plans electronically.
 

 5. Use of an electronic format does not allow the recipient to provide feedback.
 

 6. Failure to comply might result in disciplinary action.
 

 The Union contended that the impact on teachers’ terms and conditions of employment was substantial, thereby necessitating impact bargaining under Chapter 447, Part II, Florida Statutes (2008).
 

 The District responded by noting that both the requirement that teachers prepare a lesson plan and the manner by which they were to perform this task were management prerogatives under section 447.209, Florida Statutes (2008). Moreover, during the course of the letter exchanges, the District agreed to allow teachers to submit their lesson plans using an electronic format of their choice. For instance, teachers were now permitted to submit their plans through Microsoft Word or scan handwritten lesson plans into “PDF” format and then email them to administrators. The District did not “regard the pending lesson plan requirement as an appropriate subject of impact bargaining” in part because “[the Union] ... failed to show any direct and substantial effect upon the terms and conditions] of its membership’s employment stemming from the pending lesson plan requirement.” Ultimately, the District demanded more “specific information” in connection with the actual impact on the bargaining unit members. The Union refused to provide this information and no impact bargaining occurred.
 

 The Union filed an unfair labor practice charge alleging a failure to impact bargain. The Commission’s general counsel found the charge to be legally sufficient and the matter proceeded to an evidentiary hearing. The District answered the charge, arguing, inter alia, that the Union failed to “show how the requirement for filing a lesson plan electronically instead of on paper causes ‘direct and substantial effects upon existing wages, hours, terms and conditions of employment caused by and fore-seeably resulting from the implementation’ of the change at issue.” (quoting
 
 Hillsborough Classroom Teachers Ass’n v. Sch. Bd. of Hillsborough Cnty.,
 
 7 FPER ¶ 12411, 907 (1981),
 
 aff'd.,
 
 423 So.2d 969, 970 (Fla. 1st DCA1982)).
 

 The matter proceeded to hearing before a hearing officer. At the hearing, the Union entered into evidence a series of letters it had sent to the District identifying the following effects of the new policy: (1) not all teachers had been trained on eSembler and would need to be trained if the policy was implemented; (2) the implementation of the policy would require teachers to use equipment, such as printers and cartridges, to which all teachers did not have access; (3) the plan would increase some teachers’ at-school workload since they did not have a computer at home; and (4) the implementation of the policy would result in possible discipline for teachers who failed to electronically submit their lesson plans. Additionally, the Union presented the testimony of several Union officers and teachers in the bargaining unit, who provided corroborating testimony showing the substantial nature of these impacts.
 

 At the close of the evidence, the hearing officer issued a recommended order finding that the Union had fulfilled all the
 
 *727
 
 necessary requirements in order to require the District to engage in impact bargaining and that the District’s failure to do so constituted an unfair labor practice as defined in section 447.501(1)(a) and (c), Florida Statutes (2008). In reaching this conclusion, the hearing officer identified the following “specific impacts upon teachers’ workload and training that fore-seeably resulted from the [Board’s] decision to require lesson plans to be electronically submitted:” (1) “the need for adequate training opportunities for all teachers on the different methods in which they could electronically submit their lesson plans;” (2) “the need to provide the necessary equipment at all schools to implement the various alternatives for electronically submitting lesson plans;” (3) “the need for equivalent schools to standardize the content required for electronic submission of lessons plans;” (4) “the effect of requiring electronically submitted lesson plans on teachers’ workloads, schedules, classroom budgets and compensation and ways to minimize any negative effects thereto;” and (5) “the disciplinary consequences of failing to submit lesson plans electronically.” The District filed exceptions to the recommended order which were rejected by the Commission. Ultimately, the Commission concluded that the evidence established that the Union had identified impacts on wages, hours, terms and conditions of employment, and that the impacts were substantial. This appeal follows.
 

 When an appeals court is reviewing an administrative order, the interpretation by the agency or commission of its governing statutes and rules will be upheld unless clearly erroneous.
 
 Pershing Indus., Inc. v. Dep’t of Banking & Fin.,
 
 591 So.2d 991, 993 (Fla. 1st DCA 1991);
 
 Palm Beach Junior Coll. Bd. of Trs. v. United Faculty of Palm Beach Junior Coll.,
 
 425 So.2d 133, 136 (Fla. 1st DCA 1982). Moreover, findings of fact will be reviewed by the competent substantial evidence standard. § 120.68(10), Fla. Stat. (2010). Competent substantial evidence is “‘evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred.... [S]uch relevant evidence as a reasonable mind would accept as adequate to support a conclusion.’”
 
 J.S. v. Fla. Dep’t of Children & Families,
 
 18 So.3d 1170, 1175 (Fla. 1st DCA 2009) (quoting
 
 Perdue v. TJ Palm Assocs., Ltd.,
 
 755 So.2d 660, 665 (Fla. 4th DCA 1999));
 
 see also Pub. Emps. Relations Comm’n v. Dade Cnty. Police Benevolent Ass’n,
 
 467 So.2d 987 (Fla.1985).
 

 The District’s first argument is that the charge failed to make a prima facie case and was premature because the policy had not been implemented when the charge was filed. In order to establish a prima facie violation, the charge must “include the names of the individuals involved in the alleged unfair labor practice, and the time and place of occurrence of the particular acts giving rise to the dispute.”
 
 Nat’l Conference of Firemen & Oilers v. City of Riviera Beach,
 
 27 FPER ¶ 32155, 374 (2001). It also must “identify specific impacts” on wages, hours, or terms and conditions of employment resulting from the change at issue.
 
 Id.
 
 A “factually deficient charge cannot be cured by resorting to the supporting documents.”
 
 Jacksonville Supervisors Ass’n,
 
 25 FPER ¶ 30289 at 579. If the charge is sufficient, a hearing will be held, but if it is insufficient, the commission “may issue a summary dismissal of the charge.” § 447.503(2)(a),(b), Fla. Stat. (2008).
 

 We reject the District’s first argument. Paragraph two of the charge states that “[t]he issue arose on August 12, 2008, when Dr. Fran Adams, Assistant Superin
 
 *728
 
 tendent of Curriculum, sent an email to the District’s secondary school principals announcing the District’s expectation that ’100% of our secondary teachers will be doing their lesson plans on eSembler.’ ” This satisfies the requirement that the charge “include the names of the individuals involved in the alleged unfair labor practice, and the time and place of occurrence of the particular acts giving rise to the dispute.”
 
 Nat’l Conference of Firemen,
 
 27 FPER ¶ 32155 at 374.
 

 The charge went on to allege that “On December 12, 2008, Union counsel wrote [the District] stating that the Union had already sufficiently identified negotiable impacts such as increased workload, the need for training, the disciplinary consequences of non-compliance, and the financial expense to teachers of complying with the new directives.” This allegation satisfies the requirement that the charge “identify specific impacts” on wages, hours, or terms and conditions of employment resulting from the change by identifying that workloads would increase, the need for training, financial impact on bargaining unit members, and disciplinary consequences for non-compliance.
 
 Id.
 

 As additional support for its argument that the charge is facially defective, the District asserts that where a charge fails to include “prima facie proof’ of a negotiable impact on the face of the charge, it is “factually deficient and cannot be cured by resorting to the supporting documents.”
 
 Jacksonville Supervisors Ass’n,
 
 25 FPER ¶ 30289 at 579;
 
 see Gov’t Supervisors Ass’n of Fla. v. Miami-Dade Cnty.,
 
 31 FPER ¶ 50, 120 (2005) (holding that a “charge must allege and provide prima facie proof of such impact,” upon wages, hours, or terms and conditions of employment).
 

 While it is true that a “factually deficient” charge cannot be cured by resorting to supporting documents, the letter exchanges which were included with the charge added additional detail to the already sufficient allegations upon which the Commission’s general counsel was permitted to rely upon in his determination as to the sufficiency of the charge under section 447.503(1).
 
 See also Jacksonville Supervisors Ass’n,
 
 25 FPER ¶ 30289 at 579. In this case the letters provided substantive support to a charge that was already factually sufficient on its face.
 

 The District also argues that the charge was premature. According to the District, the Union was not permitted to seek impact bargaining until after the electronic lesson plan requirement was implemented.
 
 Charlotte Cnty. Support Pers. Ass’n v. Sch. Dist. of Charlotte Cnty.,
 
 33 FPER ¶ 152, 347 (2007). The District is incorrect. The appropriate time to impact bargain is prior to implementation of a change.
 
 See Leon Cnty. Police Benevolent Ass’n v. City of Tallahassee, 8
 
 FPER ¶ 13400, 726 (1982).
 

 Finally, the District argues that the Commission’s decision finding that the District improperly refused to impact bargain was not supported by competent substantial evidence. The thrust of this argument is that the District had no duty to impact bargain because the requirement that teachers submit their lesson plans electronically was merely substituting one customary duty for another mandated by section 1012.34(3)(a)4, Florida Statutes (2008), and Florida Administrative Code Rule 6A-5.065(3)(b), (10), and (12) (2008). We disagree.
 

 It is axiomatic that although a public employer has the right to unilaterally exercise its managerial prerogative, it may nonetheless have to bargain over the impact that the decision has on the terms or conditions of employment of the members of the bargaining unit.
 
 Jacksonville Supervisors Ass’n,
 
 25 FPER ¶ 30289 at 579;
 
 *729
 

 Fraternal Order of Police v. Orange Cnty. Bd. of Cnty. Comm’rs,
 
 33 FPER ¶ 322, 738 (2008);
 
 Manatee Educ. Ass’n v. Manatee Cnty. Sch. Bd.,
 
 7 FPER ¶ 12017, 33 (1980);
 
 see also Pensacola Junior Coll. Faculty Ass’n v. Bd. of Trs. of Pensacola Junior Coll.,
 
 593 So.2d 254, 255 (Fla. 1st DCA 1992). Such bargaining is known as “impact bargaining.”
 

 In order for an employer to be found to have committed an unfair labor practice for refusing to impact bargain, the charging party has the burden to establish that it made a demand for impact bargaining which identified a negotiable effect on wages, hours, terms and conditions of employment.
 
 See Int’l Union of Police Ass’ns v. Dep’t of Mgmt. Servs.,
 
 28 FPER ¶ 33137, 218 (2002) (“it is incumbent upon a union to make a demand for impact bargaining which specifically identifies negotiable effects of changes upon the terms and conditions of employment of bargaining unit employees.”). An effect is negotiable if it is “direct and substantial.”
 
 Jacksonville Supervisors Ass’n,
 
 25 FPER ¶ 30289 at 579;
 
 see also Hillsborough Classroom Teachers Ass’n,
 
 7 FPER ¶ 12411 at 907;
 
 Laborers’ Int’l Union of N. Am. v. Greater Orlando Aviation Auth.,
 
 869 So.2d 608, 612 (Fla. 5th DCA 2004) (impact bargaining is not required where the bargaining unit “failed to establish direct and substantial effects upon the terms and conditions of employment”).
 

 The District argues that it is not required to impact bargain over its decision to change a method by which one is to carry out a management prerogative.
 
 City of Lake Worth Pub. Emps. Union v. City of Lake Worth,
 
 28 FPER ¶ 33242, 438 (2002);
 
 St. Lucie Cnty. Classroom Teachers Ass’n v. Sch. Dist. of St. Lucie Cnty.,
 
 19 FPER ¶ 24071 (1993). The District’s reliance on
 
 City of Lake Worth
 
 is misplaced. In
 
 City of Lake Worth,
 
 the Commission held that impact bargaining is not required if the public employer is simply enforcing its existing laws, rules, and regulations rather than implementing a new management decision.
 
 City of Lake Worth Pub. Emps. Union,
 
 28 FPER ¶ 33242 at 440. However, the Commission went on to note that “[although an employer may act unilaterally on these issues, a public employer may not implement its management decision in a manner that affects wages, hours, or terms and conditions of employment without giving the union notice and an opportunity to bargain over the impact of the decision.”
 
 Id.
 
 Here, the manner of compliance with an already existing policy was changed. The Union had the right to demand impact bargaining once it identified impacts upon wages and terms and conditions of employment resulting from the change in the method of compliance with the existing management prerogative.
 

 Likewise, in
 
 St. Lucie County,
 
 the Commission’s general counsel summarily dismissed an unfair labor practice charge alleging a failure to impact bargain.
 
 St. Lucie Cnty.,
 
 19 FPER ¶ 24071 at 147. Concluding that no impact bargaining is required where the sole basis for the charge is that the employer is merely substituting one responsibility for another within the scope of a teacher’s customary duties, the order acknowledged
 

 [T]hat there may be negotiable proposals which flow from the School District’s decision. For instance, the additional instruction responsibilities and reduced preparation time may increase teacher workload to an extent that teachers may be required to work outside of the contractual 7 and ½ hour work day to accomplish tasks that they have previously been able to complete within designated work hours.
 

 Id.
 
 Here, the Union presented competent and substantial evidence of the impacts resulting from the District’s decision, including the increase in the number of work
 
 *730
 
 hours that teachers would be required to perform in order to comply with the District’s directive.
 

 Lastly, the District argues that the Commission erred in awarding the Union its attorney’s fees and costs associated with the action. We review the Commission’s decision by the abuse of discretion standard.
 
 See Int’l Bhd. of Painters & Allied Trades v. Anderson,
 
 401 So.2d 824, 881 (Fla. 5th DCA 1981). Section 447.503(6)(c), Florida Statutes (2009), authorizes the commission to award attorney’s fees and costs of litigation to a prevailing party when it determines such an award is appropriate. Attorney’s fees will be awarded where the charged party knew or should have known that its conduct was violative of Chapter 447, Part II, Florida Statutes.
 
 City of Delray Beach v. Prof'l Firefighters of Delray Beach,
 
 636 So.2d 157, 163 (Fla. 4th DCA 1994).
 

 At the time that the Union filed its charge, the District did not have all the evidence on which the Commission ultimately made its finding. Moreover, the District never expressly refused to bargain, and instead continued to request, right up to the time of the Union’s filing, evidence that the impact on the Union would be substantial. In holding that the District knew or should have known that its conduct constituted an unfair labor practice, the Commission failed to recognize that the District could not have known that the Union would be able to make a showing of substantial impact at the hearing. This was an abuse of discretion. We therefore reverse the Commission’s granting of attorney’s fees to the Union.
 

 Affirmed in Part and Reversed in Part.
 

 MAY and GERBER, JJ„ concur.
 

 [1]
 

 . eSembler is a web-based software that allows teachers to submit their lesson plans online.
 

 [2]
 

 . The Union is the certified bargaining agent for Indian River County teachers. § 447.203(8), (12) Fla. Stat. (2008).
 

 [3]
 

 . When a public employer exercises a management right which has substantial effects upon the wages, hours, or terms and conditions of employment, it must engage in "impact bargaining” if the certified bargaining agent so requests.
 
 Jacksonville Supervisors Ass’n, v. City of Jacksonville,
 
 25 FPER ¶ 30289, 579 (1999).